IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **DAWN M. WRIGHT** <br> 514 Church St. <br> Baltimore, MD 21225 <br> Anne Arundel County | * <br> * <br> * | |
| **SAMANTHA L. PHILLIPS** <br> 358 Gatewater Ct. #301 <br> Glen Burnie, MD 21060 <br> Anne Arundel County | * <br> * <br> * | Civil Action No.:_____ |
| **KELLY A. ELMORE** <br> 456 Norvelle Ct. <br> Glen Burnie, MD 21061 <br> Anne Arundel County | * <br> * <br> * | JURY TRIAL REQUESTED |
| **AMBER N. ALTVATER** <br> 3300 Bero Road <br> Baltimore, MD 21227 <br> Baltimore County | * <br> * <br> * | COLLECTIVE ACTION - FLSA <br><br> CLASS ACTION –  State Law Claims & <br> 26 U.S.C. § 7434 |
| **Plaintiffs,** | * | |
| v. | * | |
| **MVD ENTERPRISES INC.** <br> 1500 Defense Highway <br> Gambrills, MD 21054 <br> Anne Arundel County <br>    **serve on resident agent:** <br>        Thomas R. Callahan <br>        1500 Defense Highway <br>        Gambrills, MD 20154 | * <br> * <br> * <br> * <br> * | |
| **MICHAEL DUNN** <br> 1500 Defense Highway <br> Gambrills, MD 21054 <br> Anne Arundel County | * <br> * | |
| **Defendants.** | | |
| * * * * * * * * * * * * * * | | |

## COMPLAINT

Plaintiffs, Dawn M. Wright ("Wright"), Samantha L. Phillips ("Phillips"), Kelly A. Elmore ("Elmore") and Amber N. Altvater ("Altvater") (referred collectively as "Plaintiffs"), bring this lawsuit against their former employers, MVD Enterprises, Inc. ("Defendant MVD"), and Michael Dunn ("Mr. Dunn") (referred collectively as "Defendants"), because Defendants owe Plaintiffs unpaid wages under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). Plaintiffs also assert a claim under 26 U.S.C. § 7434 for Defendants' inaccurate, fraudulently filed W-2 tax forms concerning Plaintiffs' earnings.

## FACTS

### I. PLAINTIFFS

1. Ms. Wright is an adult resident of the State of Maryland, Anne Arundel County.

2. Ms. Wright was hired by Defendants in approximately October 2009.

3. From October 2009 until November 2016, Ms. Wright worked for Defendants as a waitress at Defendants' business, a restaurant at 7142 Ritchie Hwy, Glen Burnie, MD 21061, doing business under the name of "IHOP".

4. Ms. Phillips is an adult resident of the State of Maryland, Anne Arundel County.

5. Ms. Phillips was hired by Defendants in approximately December 2011.

6. From December 2011 until March 2013, Ms. Phillips worked for Defendants as a waitress at Defendants' business, a restaurant at 7142 Ritchie Hwy, Glen Burnie, MD 21061, doing business under the name of "IHOP".

7. Ms. Elmore is an adult resident of the State of Maryland, Anne Arundel County.

8. Ms. Elmore was hired by Defendants in approximately April 2015.

9. From April 2015 until November 2016, Ms. Elmore worked for Defendants as a waitress at Defendants' business, a restaurant at 7142 Ritchie Hwy, Glen Burnie, MD 21061, doing business under the name of "IHOP".

10. Ms. Altvater is an adult resident of the State of Maryland, Baltimore County.

11. Ms. Altvater was hired by Defendants in approximately July 2008.

12. From July 2008 until June 2015, Ms. Altvater worked for Defendants as a waitress at Defendants' business, a restaurant at 7142 Ritchie Hwy, Glen Burnie, MD 21061, doing business under the name of "IHOP".

## II. DEFENDANTS & THEIR UNLAWFUL PAY PRACTICES

13. Defendant MVD is a Maryland-based, for profit corporation, which operates restaurants as an IHOP franchisee.

14. Upon information and belief, Defendant MVD's annual gross volume of sales and/or business done is greater than $500,000.

15. Upon information and belief, Mr. Dunn is the sole owner of Defendant MVD.

16. Mr. Dunn, as the owner, was in the position to supervise all of Defendant MVD's business operations, including the restaurant where Plaintiffs worked.

17. Defendants engage in interstate commerce by purchasing and selling food, drinks, and other items in their various establishments, including the restaurant where Plaintiffs worked.

18. Mr. Dunn is the owner and operator of Defendant MVD and its several other IHOP franchised restaurants.

19. Mr. Dunn appointed managers who hired and fired employees, including Plaintiffs.

20. Mr. Dunn, as the owner, was in the position to set the manner, method and amount of pay for Defendants' employees, including Plaintiffs.

3

21. Mr. Dunn appointed managers who set the schedules for employees, including Plaintiffs.

22. Mr. Dunn, as the owner, was in the position to establish and implement Defendant MVD's pay policies.

23. Mr. Dunn, as the owner, was in the position of monitoring and administering Defendant MVD's wage-hour compliance.

24. Defendants were Plaintiffs' joint and co-employers within the meaning of the terms of the FLSA, 29 U.S.C. § 203(d), the MWHL, Md. Ann. Code, Labor & Employment, §3-401(b), and the MWPCL, Md. Ann. Code, Labor & Employment, §3-501.

25. Defendants are subject to the FLSA for owed wages, including unpaid minimum wages and overtime wages.

26. Defendants are subject to the MWHL and the MWPCL, for owed wages, including unpaid minimum wages.

27. Defendants employed and paid Ms. Wright as their employee from approximately October 2009 until approximately November 2016.

28. Defendants employed and paid Ms. Phillips as their employee from approximately December 2011 until March 2013.

29. Defendants employed and paid Ms. Elmore as their employee from approximately April 2015 until November 2016.

30. Defendants employed and paid Ms. Altvater as their employee from approximately July 2008 until June 2015.

31. Throughout Plaintiff Wright's, Elmore's and Altvater's employment with Defendants, Defendants failed to pay them the required minimum wage for all hours worked as required by the FLSA, 29 U.S.C. § 206 and the MWHL, Md. Ann. Code, Labor & Employment, §3-413.

32. Defendants, on occasions, required Plaintiffs Wright, Elmore and Altvater to work in excess of 40 hours per work week.

33. Defendants failed to pay Plaintiffs Wright, Elmore and Altvater overtime wages at a rate of one and one-half times their regular rates of pay for all overtime hours worked in excess of 40 hours per work week as required by the FLSA, 29 U.S.C. § 207, on those occasions when they worked more than 40 hours in a work week.

**A. <u>Not Paying For All Hours Worked</u>**

34. Throughout Plaintiff Wright's, Elmore's and Altvater's employment with Defendants, Defendants altered their clock-in records by "rounding down" their work hours to the nearest hour.

35. Defendants' "rounding" policy encompassed only "rounding down" in favor of Defendants and the policy consistently resulted in a failure to pay Plaintiffs Wright, Elmore and Altvater for all hours worked.

36. Plaintiffs Wright, Elmore and Altvater were not compensated for all the time they worked because Defendants' "rounded down" practice which violated the FLSA and MHWL. See also 29 C.F.R. § 785.48.

37. On several occasions, Plaintiffs Wright, Elmore and Altvater attended work earlier than scheduled and were directed by managers to clock in early and start work immediately. However, on those occasions, Defendants did not pay them for all hours worked. Rather, Defendants altered the time records so that they only got paid for the set shift schedule hours.

38. Also, on occasions, during Plaintiff Wright's, Elmore's and Altvater's employment, they forgot to clock in when they arrived at work. Defendants refused to pay for the hours they

actually worked. They were only paid by Defendants with tips; Defendants did not pay them the required hourly wage.

39. Also, during Plaintiff Wright's, Elmore's and Altvater's employment, they were asked daily by Defendants', through the managers on duty, to clock out before they were directed and required to create rolls of silverware using linen napkins.

40. Plaintiffs Wright, Elmore and Altvater spent close to one hour daily creating the required rolls of silverware without getting paid their hourly wage.

41. Defendants are in sole possession of the time records for the hours worked by Plaintiffs.

42. Because Defendants electronically altered the time records, the time records as they exist now, after altercation and tampering, may not actually reflect all hours worked.

43. Upon information and belief, Defendants did not seek the advice and counsel of an attorney knowledgeable about the requirements of the FLSA, MWHL, or MWPCL prior to deciding not to pay Plaintiffs Wright, Elmore and Altvater all owed wages for all hours worked, including minimum wages and overtime wages.

44. Defendants' failure to pay Plaintiffs Wright, Elmore and Altvater all wages owed, including minimum wages and overtime wages, was intentional and willful.

45. Defendants' failure to pay Plaintiffs Wright, Elmore and Altvater all wages owed was not the result of a bona fide dispute.

46. Upon information and belief, the franchisor IHOP, provides its franchisees, including the Defendants, with written materials that provide information as to franchisees' obligations to pay overtime and the minimum wage; to have proper recordkeeping as to all time worked by employees; and/or tip credit rules.

B. **Not Paying Overtime Wages**

47. Plaintiffs Wright, Elmore and Altvater, on several occasions during their employment with Defendants, worked more than 40 hours in a work week.

48. On those occasions when Plaintiffs Wright, Elmore and Altvater did work more than 40 hours in a work week, Defendants did not pay them overtime wage.

49. Plaintiffs Wright, Elmore and Altvater were always paid by Defendants on an hourly basis.

50. Plaintiffs Wright, Elmore and Altvater were non-exempt employees under the MWHL and FLSA.

51. Plaintiffs Wright, Elmore and Altvater did not supervise employees.

52. Plaintiffs Wright, Elmore and Altvater worked for Defendants as waitresses.

53. Defendants willfully refused to and fail to pay Plaintiffs Wright, Elmore and Altvater overtime wages at a rate of one and one-half times their regular rate of pay for all overtime hours worked in excess of 40 hours per work week as required by the FLSA, 29 U.S.C. § 207.

C. **Not Paying The Minimum Wage**

54. The State of Maryland requires that employers pay hourly employees a required minimum wage. MWHL, Md. Ann. Code, Labor & Employment, §3-413.

55. The FLSA requires that employers pay hourly employees a required minimum wage. FLSA, 29 U.S.C. § 206.

56. Wright, Elmore and Altvater all worked as waitresses and worked, in part, for tips left by customers.

57. Defendants did not pay Plaintiffs Wright, Elmore and Altvater a fixed hourly wage that satisfied their requirements of the lawful obligations to pay the minimum wage.

58. For example, Plaintiffs Wright, Elmore and Altvater earned an hourly wage of $3.63 from the Defendants during 2009 to 2016.

59. Because Defendants did not pay Plaintiffs Wright, Elmore and Altvater a fixed hourly wage that satisfied minimum wage requirements throughout the Plaintiffs' entire employment, Defendants considered that the tips earned by the Plaintiff waitresses was sufficient to meet their minimum wage obligations when the hourly rate was added to the tips earned.

60. In other words, Defendants were attempting to take a "tip credit" to meet the minimum wage.

61. However, Defendants failed to comply with the FLSA and MWHL to have a valid tip credit as required by FLSA, 29 U.S.C. § 203(m) and MWHL, Md. Ann. Code, Labor & Employment, §3-419.

62. Upon information and belief, the exact amount of tips earned daily by Plaintiff waitresses was not included in Defendants' gross receipts.

63. In a situation where the employer uses tips to help meet the minimum wage requirement for its employees, the employee must be informed of this fact and the employee must also be permitted to keep tips, unless the employee is part of a tip pool with other employees who regularly receive tips.

64. Defendants never told Plaintiff waitresses that they were being paid pursuant to an established tip credit policy or rule.

65. Defendant never provided Plaintiff waitresses with any written document that explained, set forth or constituted the Defendants' tip credit policy or rule.

66. Defendants never told Plaintiff waitresses that they were part of a valid tip pool arrangement.

67. Defendants never provided Plaintiff waitresses with any written document that explained, set forth or constituted the Defendants' tip pooling arrangement.

68. Defendants did not allow each Plaintiff to retain all the individual tips that each Plaintiff earned individually.

69. Defendants directed each Plaintiff to pay directly $7 to expediters (if there were any expediter on duty on that particular day), and $5 to busboys from each of the Plaintiff's respective individual tips.

70. The exact amount of tips earned daily by Plaintiff waitresses was not included in their bi-weekly pay stubs.

71. Defendants did not require or ask the Plaintiff waitresses to report the exact amount of their tips at the end of their shift.

72. Defendants uniformly and always recorded and reported that Plaintiff waitresses' tips were 12% of their respective individual sales.

73. This policy of reporting Plaintiff waitresses' tips as a fixed amount did not reflect that they were required to pay expediters and busboys from their tips.

74. Further, where a customer left no tip for a Plaintiff waitress after a sale, 12% of that particular sale amount was still added to the Plaintiff waitress' tip earnings by the Defendants.

75. Even if a customer left a tip below 12% to a Plaintiff waitress after a sale, 12% of that particular sale amount nevertheless was added to the Plaintiff waitress' tip earning by the Defendants.

76. Defendants appeared to take a tip credit based on its approximated 12% tip earnings of the Plaintiff waitresses.

77. The claimed tip credit claimed by Defendants, at numerous times, exceeded the amount of tips actually received by the Plaintiff waitresses.

78. As a result of this policy, Plaintiff waitresses' income was overstated in their respective pay stubs and W-2 tax forms, and Plaintiff waitresses were paid below the minimum wage.

79. Defendants are in sole possession of the records relating tips paid by customers and amounts that Defendants paid to the Plaintiff waitresses for so-called tips.

80. Because Defendants did not a have lawfully compliant tip credit and tip pooling policy, Defendants failed to pay the Plaintiff waitresses the required minimum wage.

### III. DEFENDANTS & THEIR FRAUDULENT TAX FORMS

81. Defendants provided Plaintiffs with paystubs and W-2s.

82. Defendants fraudulently created paystubs and W-2s for Plaintiffs that reported inaccurate amounts of wages and federal and state withholdings.

83. The amounts of wages and withholdings reported by Defendants did not accurately reflect the actual wages earned by Plaintiffs during their employment with Defendants.

84. Defendants knowingly and willfully falsified wage and earning records for each Plaintiff in submission of W-2s to the IRS in violation of 26 U.S.C. § 7434.

85. The fraudulent creations of paystubs and W-2s by Defendants were deliberate and have been going on for many years.

86. The creations of false paystubs and W-2s are not due to mistake, but a deliberate and willful practice by Defendants to falsify the wage and earning records of its employees, including the Plaintiffs.

87. Defendants' conduct was willful and intentional and not inadvertent.

88. Defendants took affirmative steps in creating the inaccurate and fraudulent W-2s;

## FLSA OVERTIME COLLECTIVE ACTION ALLEGATIONS

89. This action proceeds as an individual case and also is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for unpaid minimum wages, owed overtime wages, liquidated damages, and attorneys' fees and costs under the FLSA.

90. In addition to Plaintiffs, there are numerous current and former employees (waiters and waitstaff) of Defendants who are similarly situated with regard to being subject to the same unlawful wage hour policies of the Defendants.

91. These similarly situated employees are known to Defendants and are readily identifiable and locatable through their records.

92. The many similarly situated employees were subject to the same pay policies and practices as the Plaintiffs, including :

    (a) not being paid for all hours worked;

    (b) not being paid overtime wages; and

    (c) not being paid the minimum wages.

93. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. §216(b), for the purpose of adjudicating their claims for unpaid and owed wages, liquidated damages and attorneys' fees under the FLSA.

94. The Plaintiffs and the similarly situated employees were subject to the same established and implement unlawful pay polices.

95. The opt-in consent forms of Plaintiffs Wright, Elmore and Altvater are attached hereto as **Exhibit 1**.

## CLASS ACTION FOR STATE LAW VIOLATIONS AND WILLFUL FRAUDULENT TAX FILINGS

96. Plaintiffs seek class action status on their claims arising under the MWHL, MWPCL and

11

26. U.S.C. § 7434.

97. Plaintiffs Wright, Elmore and Altvater seek class action status of their MWHL and MWPCL claims for similarly situated employees who worked for Defendants for the three-year period preceding the filing of this Complaint, in Maryland, and were not paid the required minimum wages, overtime wages, and for all hours worked.

98. Plaintiffs also seek class action status on the 26 U.S.C. 7434 claim for similarly situated workers who worked for Defendants for the six-year period preceding the filing of this Complaint, and for whom Defendants intentionally issued false and inaccurate W-2s.

99. The classes are so numerous that joinder of all members is impracticable because the number of members in each class is at least 25.

100. Class action is a superior method because these workers are numerous and unknown but easily identifiable through Defendants' records.

101. Questions of law or fact common to the class, including the core claims of the Plaintiffs.

102. Claims and defenses of the representative parties are typical of the claims or defenses of the class because Defendants subjected the entire workforce to the same illegal pay policies and, upon information and belief, continue to do so through the present date.

103. The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class. Plaintiffs' litigation will further the class interests.

104. A class action furthers judicial economy because Plaintiffs' claims and class claims require the same proof and elicit the same defenses.

105. A class action reduces the risk of an unjust result to nearly identical claims due to the

vagaries of litigation.

106. A class action permits unified discovery and reduces burdensome duplicate discovery and discovery disputes.

107. This class action incorporates all remedies sought for Defendants' violations of 26 U.S.C. § 7434 and any remedy the Court deems just.

## JURISDICTION AND VENUE

108. The jurisdiction of this Court is invoked due to the asserted violation of a federal statute and pursuant to 28 U.S.C. § 1331.

109. Venue is appropriate in this jurisdiction because the unlawful events occurred in this District.

## VIOLATIONS OF LAW

### COUNT I – VIOLATIONS OF THE MARYLAND WAGE AND HOUR LAW, FAILURE TO PAY THE REQUIRED MINIMUM WAGE

110. All allegations of the Complaint are expressly incorporated herein.

111. Defendants willfully and intentionally violated the provisions of the Maryland Labor & Employment Code by failing to pay Plaintiffs Wright, Elmore and Altvater the required minimum wage for all hours worked as required by the MWHL, Md. Ann. Code, Labor & Employment, §3-413.

112. Defendants failed to pay the Plaintiffs the minimum wage required because Defendants did not pay Plaintiffs for all hours worked.

113. Defendants failed to provide the Plaintiffs the minimum wage required because Defendants were not allowed to take a tip credit.

114. Defendants failed to provide the Plaintiffs the minimum wage required because there was no valid tip pooling policy.

13

115. Defendants "rounding down" policy resulted in Plaintiffs not getting paid for all hours works, including when the work, if recorded, would have resulted in overtime wages being paid.

116. As a result of the unlawful acts of Defendants, Plaintiffs Wright, Elmore and Altvater have been deprived minimum wages in amounts to be determined at trial and are entitled to recovery of such amounts, plus liquidated damages, attorney's fees, and costs.

117. There is no bona fide dispute that Plaintiffs Wright, Elmore and Altvater are owed the requested wages.

118. <u>Relief requested</u> - Plaintiffs Wright, Elmore and Altvater request that: (a) Defendants be ordered to pay them all minimum wages owed for all hours worked; (b) that Plaintiffs Wright, Elmore and Altvater be awarded an additional amount of liquidated damages; (c) that Plaintiffs Wright, Elmore and Altvater be awarded pre- and post- judgment interest; and (d) that Plaintiffs Wright, Elmore and Altvater be awarded their attorney's fees and costs.

**COUNT II – VIOLATIONS OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW FOR FAILURE TO TIMELY PAY ALL WAGES DUE**

119. All allegations of the Complaint are expressly incorporated herein.

120. Defendants refused to timely pay Plaintiffs Wright, Elmore and Altvater all wages due, in violation of the MWPCL, Md. Code Ann., Labor & Empl. §§ 3-502 and 3-505.

121. Ms. Wright's employment with Defendants ended in approximately November 2016.

122. Ms. Elmore's employment with Defendants ended in approximately November 2016.

123. Ms. Altvater's employment with Defendants ended in approximately June 2015.

124. Defendants have not paid Plaintiffs Wright, Elmore and Altvater all of their owed wages, including minimum wages and overtime wages. Defendants also did not pay Plaintiffs timely for all hours worked.

125. Pursuant to the MWPCL, Md. Code Ann., Labor & Empl. § 3-502, Defendants were

obligated to pay Plaintiffs Wright, Elmore and Altvater for all legally owing wages on a regular basis.

126. Defendants failed to timely pay Plaintiffs all of the wages owed to them.

127. Defendants' actions in failing to pay Plaintiffs Wright, Elmore and Altvater all owing wages were willful violations of the MWPCL.

128. Months have passed from the date on which the Defendants were required to have paid Plaintiffs Wright, Elmore and Altvater all owed wages as required by the MWPCL, Md. Code Ann., Labor & Empl. § 3-507.2(a).

129. There is no bona fide dispute as to the wages owed to Plaintiffs Wright, Elmore and Altvater.

130. <u>Relief requested</u> - Plaintiffs Wright, Elmore and Altvater request that: (a) Defendants be ordered to pay them all owed wages; (b) Plaintiffs Wright, Elmore and Altvater be awarded treble damages; (c) that Plaintiffs Wright, Elmore and Altvater be awarded pre- and post-judgment interest; and (d) Plaintiffs Wright, Elmore and Altvater be awarded their attorney's fees and costs.

### COUNT III – FLSA CLAIM FOR OWED MINIMUM WAGES

131. All allegations of the Complaint are expressly incorporated herein.

132. Plaintiffs Wright, Elmore and Altvater are entitled to minimum wages under the FLSA, 29 U.S.C. § 206.

133. Defendants violated the provisions of the FLSA by failing and refusing in a willful and intentional manner to pay Plaintiffs Wright, Elmore and Altvater the required minimum wage for all hours worked per work week, as required by the FLSA, 29 U.S.C. § 206.

134. Defendants failed to pay the Plaintiffs Wright, Elmore and Altvater the minimum wage

required because Defendants did not pay Plaintiffs Wright, Elmore and Altvater for all hours worked.

135. Defendants failed to provide the Plaintiffs Wright, Elmore and Altvater the minimum wage required because Defendants were not allowed to take a tip credit.

136. Defendant failed to provide the Plaintiffs Wright, Elmore and Altvater the minimum wage required because there was no valid tip pooling policy.

137. Defendants' "rounding down" policy resulted in Plaintiffs Wright, Elmore and Altvater not getting paid for all hours works, including when the hours of work, if recorded, would have resulted in overtime wages being paid.

138. Defendants' "rounding down" policy is per se unlawful. *See* 29 C.F.R. § 785.48.

139. By reason of the aforesaid violations of the FLSA, Defendants are liable to Plaintiffs Wright, Elmore and Altvater in an amount equal to the unpaid and owing minimum wages, unpaid penalties/liquidated damages, all other applicable penalties, attorney's fees and costs, and pre- and post- judgment interest.

140. <u>Relief requested</u> - Plaintiffs Wright, Elmore and Altvater request that: (a) Defendants be ordered to pay them all minimum wages owed; (b) liquidated damages be assessed against the Defendants; (c) Plaintiffs Wright, Elmore and Altvater be awarded pre- and post- judgment interest; and (d) Plaintiffs Wright, Elmore and Altvater be awarded their attorney's fees and costs. In addition, Plaintiffs Wright, Elmore and Altvater request that an Order issue enjoining Defendants to comply with the FLSA.

### COUNT IV – FLSA CLAIM FOR OWED OVERTIME

141. All allegations of the Complaint are expressly incorporated herein.

142. Plaintiffs Wright, Elmore and Altvater are hourly, non-exempt employees, entitled to

overtime pay under the FLSA, 29 U.S.C. § 207.

143. Defendants did not pay Plaintiffs Wright, Elmore and Altvater overtime as a result of Defendants not paying Plaintiffs for all hours worked, when the actually worked more than 40 hours a week.

144. Defendants' "rounding down" policy resulting in not paying Plaintiffs Wright, Elmore and Altvater overtime wages when they worked more than 40 hours in a workweek.

145. Defendants violated the provisions of the FLSA by failing and refusing in a willful and intentional manner to pay Plaintiffs Wright, Elmore and Altvater overtime wages at a rate of one and one-half times their regular rate of pay for all overtime hours worked in excess of 40 hours per work week, as required by the FLSA, 29 U.S.C. § 207.

146. By reason of the aforesaid violations of the FLSA, Defendants are liable to Plaintiffs Wright, Elmore and Altvater in an amount equal to the unpaid overtime, unpaid overtime penalties/liquidated damages, all other applicable penalties, attorney's fees and costs, and pre- and post- judgment interest.

147. <u>Relief requested</u> - Plaintiffs Wright, Elmore and Altvater request that: (a) Defendants be ordered to pay Plaintiffs Wright, Elmore and Altvater all overtime wages owed for all overtime hours worked; (b) liquidated damages be assessed against the Defendants; (c) Plaintiffs Wright, Elmore and Altvater be awarded pre- and post- judgment interest; and (d) Plaintiffs Wright, Elmore and Altvater be awarded their attorney's fees and costs. In addition, Plaintiffs Wright, Elmore and Altvater request that an Order issue enjoin Defendants to comply with the FLSA.

### COUNT V – WILLFUL VIOLATIONS OF 26 U.S.C. § 7434

148. All allegations of the Complaint are expressly incorporated herein.

149. Defendants were responsible to submit accurate wage statements for each Plaintiff to the IRS.

150. Defendants willfully and knowingly filed false W-2 forms that misstated Plaintiffs' wages earned.

151. Defendants knowingly filed false W-2s with the IRS concerning Plaintiffs' employment wages and misstated the amount paid in fact, and the amount owed in fact, to the IRS.

152. Defendants took affirmative steps to accomplish their fraudulent activity.

153. The fraud was not a result of mistake or an inadvertent error.

154. Defendants never ceased engaging in the complained-of fraud.

155. Plaintiffs sue for relief under 26 U.S.C. § 7434.

156. <u>Relief requested</u> – Plaintiffs, pursuant to subsection (b) of 26 U.S.C. § 7434, request that: (a) Defendants be ordered to pay Plaintiffs the greater of actual damages or a statutory penalty of $5,000 for each fraudulently filed W-2; and (b) Defendants be ordered to pay Plaintiffs' attorney's fees and costs.

Respectfully submitted,

_____
Stephen Lebau, Bar #07258
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1203
fax. 410.296.8660
sl@joblaws.net
*Attorneys for the Plaintiffs*

## REQUEST FOR JURY TRIAL

Plaintiffs request that a jury of their peers hear and decide the claims asserted in this Complaint.

_____
Stephen Lebau, Bar #07258